Harold L. Murphy, SENIOR UNITED STATES DISTRICT JUDGE
This case is before the Court on the Omnibus Motion in Limine to Exclude Various Testimony and Evidence at Trial ("Plaintiff's Motion in Limine") filed by Plaintiff United States of America upon the relation and for the use and benefit of Tennessee Valley Authority ("TVA") ("Plaintiff") [61] and on the Motion in Limine ("Defendant's Motion in Limine") filed by Defendant Larry Wayne Stamey ("Defendant") [62].
*1328 I. Procedural Background
As directed by the Court, the Parties filed their Motions in Limine on October 10, 2018. (Pl.'s Mot. Limine (Docket Entry No. 61); Def.'s Mot. Limine (Docket Entry No. 62).) The briefing process for those Motions, as established by the Court's October 3, 2018 Order, is complete. The Court therefore finds that the matters are ripe for resolution.
II. Defendant's Motion in Limine
Defendant filed a Motion in Limine seeking to exclude a variety of things, including evidence, argument, or inferences: (1) "concerning expert opinions for which Plaintiff did not make timely and complete Rule 26(a)(2) disclosures" (Def.'s Mot. Limine at 1); (2) "concerning the absence of severance damages, or lack of damage to property adjacent to electric transmission lines, which has not been disclosed to [Defendant]" (id. at 2); (3) "concerning the existence of any flood plain on the subject property, or its effect upon the development potential of the subject property, in the absence of verifiable data showing the elevation of the subject property" (id. ); (4) "concerning the proportion of landowners who settle eminent domain disputes with Plaintiff without proceeding to trial versus the landowners who proceed to trial against Plaintiff in eminent domain disputes" (id. ); (5) "intended to direct the jury's attention to the fact that any judgment in this case will be paid out of public funds, such as references to 'taxpayer money' or 'public project budget overruns,' or the like" (id. ); (6) "relating to the highest and best use of Defendant's land for agricultural purposes" (id. ); (7) "concerning sales data of properties that are not comparable to the subject property in terms of their size, shape, use, or access" (id. at 3); (8) "concerning sales of real estate that were not 'arms length' transactions, or fair representations of the market price, such as estate sales[ ] or owner financed sales" (id. ); (9) "related to the subject property as consisting of 12.28 acres, when in fact the subject property includes two adjacent one acre tracts of land, improved with residential structures, and also includes 8 acres of land that is owned by [Defendant], and used for residential development, but separated from the remaining property by Water Tank Road" (id. ); (10) "the Flood Map, included on Plaintiff's exhibit list as No. 8, but not otherwise authenticated by any witness" (id. at 4); and (11) "intended to divert the jury's attention to any public purpose or public value of the electric transmission line at issue" (id. ).[1] The Court addresses those issues in turn.
*1329 A. Expert Opinions
Defendant argues that Plaintiff's expert "appraiser, Marion Wilson, in his expert report, indicates that he did not find damages based on proximity to the transmission line based on several studies he claims to have conducted in the past, and others which he has reviewed, which allegedly indicated no damages to lots or properties adjacent to electric transmission lines." (Br. Supp. Def.'s Mot. Limine at 2.) Defendant notes that Mr. Wilson claimed to have attached summaries of two of those studies to his report, but that he did not attach the summaries or studies. (Id. ) According to Defendant, "[b]ecause Mr. Wilson failed to include the aforementioned studies in his expert report, and they were not otherwise provided by [Plaintiff], any evidence or opinion based upon such reports must be excluded from the trial of this case." (Id. )
Plaintiff opposes this portion of Defendant's Motion in Limine. (Resp. Def.'s Mot. Limine at 4-6.) Plaintiff notes that Defendant's arguments "stem from his improper expansion of the subject property at issue in this case." (Id. at 2.) According to Plaintiff, Defendant is seeking damages for all the property that he owns in the vicinity of the 1.58 acre easement and right-of-way for the transmission line, although the transmission line only crosses a small portion of one parcel of Defendant's land. (Id. ) Plaintiff acknowledges that Defendant owns approximately forty-six acres in the area of the transmission line, including: (1) Tax Parcel No. 021 083, consisting of 12.28 acres and used for farming, which the transmission line crosses; (2) Tax Parcel No. 021 083A, consisting of one acre used for residential purposes and not crossed by the transmission line; (3) Tax Parcel No. 021 117, consisting of one acre used for residential purposes and not crossed by the transmission line; (4) Tax Parcel 021 087, consisting of 22.79 acres used for agricultural purposes, not crossed by the transmission line, not included in the Parties' stipulated map, and located across a public road from the subject property; and (5) Tax Parcel 021 128A, consisting of 8.59 acres used for agricultural purposes, not crossed by the transmission line, not included in the Parties' stipulated map, and located across a public road from the subject property. (Id. at 3-4.)
Plaintiff notes that the referenced adjacent lots, Tax Parcels 021 083A and 021 117, are not relevant to the issue of just compensation because they are used for a different purpose than the subject property, and any expert opinions concerning these properties are irrelevant. (Resp. Def.'s Mot. Limine at 4.) Plaintiff further notes that Mr. Wilson did not simply base his opinions of no damage to those parcels on the referenced studies, and that he personally inspected the parcels. (Id. at 4-5.) Plaintiff also states that it produced Mr. Wilson's reports for the three properties to Defendant. (Id. )
In his reply, Defendant argues again that Mr. Wilson failed to disclose the studies upon which he relies. (Reply Supp. Def.'s Mot. Limine (Docket Entry No. 70) at 2-4.)
The Court denies this portion of Defendant's Motion in Limine. As discussed infra, Defendant bases his argument on parcels that are not relevant to the issue of just compensation. The two parcels for which Defendant seeks to recover damages are separate parcels used for different purposes and are not part of the subject property for purposes of determining just compensation in this case. In any event, Mr. Wilson personally inspected the properties, and Plaintiff disclosed the expert reports to Defendant. Defendant's arguments do not warrant excluding this evidence, and the Court denies this portion of Defendant's Motion in Limine.
*1330 B. Absence of Severance Damages/Lack of Damage to Property Adjacent to Transmission Lines
Defendant argues that Plaintiff "has failed to disclose any basis for Marion Wilson's opinion that electric transmission lines do not damage the value of adjacent property." (Br. Supp. Def.'s Mot. Limine at 3.) Defendant contends that Mr. Wilson failed to produce the studies he relied upon, and argues that, "[i]n their absence, Mr. Wilson clearly lacks any basis for the expression of such opinions in the trial of this case." (Id. ) Defendant further argues that Plaintiff "has not identified any other witnesses or evidence which would provide a basis for an opinion or inference that electric transmission lines do not reduce the value of adjacent property." (Id. ) Plaintiff opposes this portion of Defendant's Motion, arguing that "any argument regarding damages, severance or otherwise, to the adjacent parcels is irrelevant due to the absence of unity of use," and "Mr. Wilson did disclose the basis for finding no damage to the adjacent parcels in his reports." (Resp. Def.'s Mot. Limine at 6.) In his reply, Defendant argues that Mr. Wilson failed to disclose the basis for his opinion. (Reply Supp. Def.'s Mot. Limine at 4-5.)
The Court denies this portion of Defendant's Motion in Limine. As discussed above, the two parcels at issue in this portion of Defendant's Motion are not part of the subject property, and this evidence is irrelevant. In any event, Mr. Wilson disclosed the basis for finding no damage to those parcels in his report. Defendant is not entitled to exclude this evidence, and the Court denies this portion of Defendant's Motion in Limine.
C. Flood Plain and Its Effect
Defendant argues that Mr. Wilson "bases his opinion of the value of the subject property on flood plain maps which he did not prepare, and cannot authenticate," and that "the map in question FIRM Panel 0042D, shows the subject property to be within zone AE, which indicates that property lying below the Base Flood Elevation ('BFE') may be subject to flooding." (Br. Supp. Def.'s Mot. Limine at 3-4.) According to Defendant, Mr. Wilson claims to use the map to support his opinion that the subject property is mostly flood prone. (Id. at 4.) Defendant complains that "nowhere in the report does Mr. Wilson indicate that he conducted or had access to an elevation survey of any part of the subject property, and [in] the absence of such, he lacks any basis for concluding that any part of the property lies below the base flood elevation of 628 feet." (Id. ) Defendant notes that he will testify that the property does not flood, that FIRM Panel 0042D is incorrect, and that he requested and received a letter of map amendment removing his residence from the Zone AE designation. (Id. ) Defendant argues that the Court should exclude Mr. Wilson's opinions concerning the elevation of the property or the fact that it is subject to flooding as irrelevant. (Id. )
Plaintiff opposes this portion of Defendant's Motion. (Resp. Def.'s Mot. Limine at 6-8.) Plaintiff correctly notes that these arguments are similar to the ones offered by the defendant in United States of America v. Easements and Rights-of-Way Over a Total of 15.66 Acres of Land, Civil Action File No. 4:16-CV-0338-HLM (the "Hobgood action"), which the Court rejected. (Id. at 6-8.) Plaintiff requests a similar ruling in this case. (Id. at 8.)
In his reply, Defendant argues that the flood map at issue in this action is different from the flood map at issue in the Hobgood action. (Reply Supp. Def.'s Mot. Limine at 5-7.) According to Defendant, "[b]ecause neither Mr. Wilson nor the TVA has disclosed an elevation survey of *1331 the [subject] property, or any other evidence that would show whether it lies above or below the BPE, the Court should exclude speculative evidence and argument at trial concerning the impact of flood waters on the value of [Defendant's] property." (Id. at 7.)
The Court denies this portion of Defendant's Motion. First, this portion of the Motion amounts to an untimely Daubert motion. Second, the maps at issue were prepared by the Federal Emergency Management Agency ("FEMA") and are admissible under the public records hearsay exception of Federal Rule of Evidence 803(8). Third, Mr. Wilson properly considered the maps under relevant appraisal standards, and it is generally accepted in the appraisal profession for appraisers to refer to FEMA maps. Fourth, specific training or expertise concerning engineering, surveying, or elevation studies is not required for Mr. Wilson to give an admissible appraisal opinion. Fifth, the letter of map amendment is subject to exclusion because Defendant never provided it during discovery. Sixth, Defendant can adequately explore any alleged deficiencies in Mr. Wilson's testimony via cross-examination. The Court therefore denies this portion of Defendant's Motion in Limine.
D. Proportion of Landowners Who Settle
Defendant also moves to exclude "argument, evidence, or inference concerning the proportion of landowners who settle eminent domain disputes" rather than proceeding to trial, arguing that this evidence or argument "would be intended to suggest that since Defendant has proceeded to trial, he is greedier, more stubborn, or more unreasonable than other condemnee landowners." (Br. Supp. Def.'s Mot. Limine at 4-5.) Plaintiff does not oppose this portion of the Motion as long as the exclusion applies to all Parties. (Resp. Def.'s Mot. Limine at 8.)
The Court grants this portion of Defendant's Motion in Limine. First, Plaintiff does not oppose it. Second, this type of argument or evidence would be irrelevant, or, alternatively, unfairly prejudicial.[2] The Court's ruling on this portion of the Motion in Limine applies to all Parties.
E. Payments from Public Funds
Defendant also moved to exclude evidence, argument, or inferences suggesting that any judgment in this case would be paid from public funds. (Br. Supp. Def.'s Mot. Limine at 5.) Defendant contends that this type of argument or evidence would be irrelevant, or, alternatively, would be unfairly prejudicial. (Id. at 5-6.)
Plaintiff opposes the Motion "only to the extent it seeks to exclude or limit evidence relating to [Plaintiff's] status as a federally-owned corporate agency and instrumentality of the United States, [Plaintiff's] mission and purpose, or construction of the transmission line for which the easement and right-of-way at issue were acquired." (Resp. Def.'s Mot. Limine at 9.)
*1332 The Court grants this portion of Defendant's Motion in Limine to the extent that Defendant seeks to preclude evidence or argument suggesting that any judgment in this case would be paid from public funds or increase public utility rates. The Court, however, denies the Motion to the extent that it seeks to preclude evidence or argument concerning the public nature of TVA. This ruling applies to all Parties.
F. Highest and Best Use of Land for Agricultural Purposes
Defendant also moved to exclude evidence, argument, or inference relating to the highest and best use of the subject property for agricultural purposes. (Br. Supp. Def.'s Mot. Limine at 6.) According to Defendant, his "property was not used as a farm on the date of taking, and has not been used for that purpose for over ten years, when Defendant ceased raising cattle." (Id. ) Defendant contends that his "property is graded, level with the public roads that surround it, and ready for residential development," and that he "has already constructed two rental homes on the site, which he owns, and the balance of the property stands ready for construction of additional homes." (Id. ) Defendant argues that Plaintiff has not met its burden to show that the property's highest and best use is agricultural property. (Id. at 7.)
Plaintiff opposes this portion of Defendant's Motion. (Resp. Def.'s Mot. Limine at 9-10.) As an initial matter, Plaintiff notes that Defendant's argument "directly contradicts Defendant's own statements and other evidence regarding the parcel at issue - 021 083." (Id. at 10.) Plaintiff points out that Defendant claimed in discovery that he had used this parcel as a farm for the previous ten years, that he had no written plans for development, that he was only thinking about building more houses, and that the other parcels, 021 083A and 021 117 were used for residential purposes. (Id. ) Plaintiff also notes that "Defendant has a conservation use assessment in place on the 12.28 acre subject property where he has affirmed, under oath, its use as agricultural land," while he had no such assessment in place for parcels 021 083A and 021 117. (Id. ) Plaintiff further points out that the Gordon County Tax Data indicate that Defendant is using the other two parcels for residential purposes.
In his reply, Defendant argues that Plaintiff "has no evidence to show that any of the [subject] property was used for agriculture on the date of taking." (Reply Supp. Def.'s Mot. Limine at 8.) According to Defendant, "there was no agreement between [the Parties], over what constitutes the 'subject property' in this case, no stipulation was reached concerning that issue, and [Defendant's] answer was accurate as to his 22.79 acre tract (tax parcel 021-087) which contains his residence and his garden." (Reply Supp. Def.'s Mot. Limine at 8.) Defendant contends that all of his other property is used for residential purposes. (Id. ) Defendant also argues that the conservation use easement makes no difference, contending that, "[b]y the time this action was filed any such agricultural use had long ceased." (Id. at 9.)
The Court denies this portion of Defendant's Motion for several reasons. First, Defendant's position is directly contrary to the position that Defendant took in his responses to Plaintiff's Interrogatories. In his response to Interrogatory No. 7, Defendant stated: "Over the last ten years I have used the property for farming and that's about it. I raised a few cattle at one time but not anymore." (Resp. Interrog. No. 7 (Docket Entry No. 61-4).) Defendant has not shown that this response applied only to the parcel of property in which he has his residence. Second, Defendant has a conservation use assessment in place on this property, and, as part of that assessment, he agreed it was used as agricultural *1333 property. (Attach. 9 (Docket Entry No. 65-9).)[3] Third, the other two parcels of property are used for different purposes, as referenced in the tax records. (Attachs. 10-11 (Docket Entry Nos. 65-10, 65-11).) Fourth, as previously noted and as discussed infra, the Court cannot consider the subject property and the residential parcels as one unit because there is no unity of use. The Court therefore denies this portion of Defendant's Motion in Limine.
G. Sales Data for Properties That Are Not Comparable
Next, Defendant seeks to exclude evidence, argument, or inferences relating to sales data for properties that are not comparable to the subject property in terms of size, shape, location, use, or access. (Br. Supp. Def.'s Mot. Limine at 7-8.) Defendant argues that Plaintiff's "appraiser, in his expert report, has offered sales of properties that are not similar to the subject [property] in terms of their size, shape, location, use or access." (Id. at 8.) Defendant wants a hearing on this issue. (Id. )
Plaintiff opposes this portion of Defendant's Motion. (Resp. Def.'s Mot. Limine at 11.) Plaintiff notes that "Defendant's argument is vague and non-specific and provides no basis for the Court to exclude this evidence: Defendant fails to identify any parcel relied upon by Mr. Wilson that is not comparable." (Id. ) Plaintiff further argues that this Motion "amount[s] to an untimely Daubert motion." (Id. )
In his reply, Defendant again requests a hearing on this issue. (Reply Supp. Def.'s Mot. Limine at 9-10.) Defendant further argues that "this motion is not a disguised [D]aubert attack, it merely seeks the Court to exercise its well established gatekeeper role to exclude from evidence sales data that is not reasonably similar to the subject property and to limit evidence to admissible evidence." (Id. at 10.)[4]
The Court denies this portion of Defendant's Motion. First, this argument is really a challenge to Mr. Wilson's expert opinion and, as such, it is an untimely Daubert challenge. Second, Defendant's challenge is not sufficiently specific, as he fails to identify any parcel that he claims is not comparable. This is a matter for cross-examination, not exclusion. Defendant can adequately explore any alleged deficiencies in Mr. Wilson's testimony and opinions via cross-examination. The Court therefore denies this portion of Defendant's Motion in Limine.
H. Not Arm's Length Sales or Fair Market Price
Defendant also seeks to exclude evidence, argument, or inference relating to sales that were not arms' length transactions or were not fair representations of the market price, such as estate sales or owner-financed sales. (Br. Supp. Def.'s Mot. Limine at 8-9.) According to Defendant, Plaintiff's "appraiser, in his expert report, has offered sales of properties that are not arms length, some of which are instead ... estate sales or owner financed sales." (Id. at 9.) Defendant wants a hearing on this issue. (Id. )
*1334 Plaintiff opposes this portion of Defendant's Motion. (Resp. Def.'s Mot. Limine at 11-12.) Plaintiff argues that Defendant's Motion is vague and non-specific, as he has not identified a sale that is not an arms'-length transaction. (Id. ) Plaintiff further contends that this Motion is really an untimely Daubert motion. (Id. at 12.)
In his reply, Defendant raises the same arguments as set forth supra Part II.I. (Reply Supp. Def.'s Mot. Limine at 8-9.)
The Court denies this portion of Defendant's Motion. First, Defendant did not make a sufficiently specific challenge, as he failed to identify a single sale that he claimed did not result from an arms'-length transaction. Second, this argument is really an untimely Daubert challenge. Defendant can raise this challenge adequately via cross-examination. The Court therefore denies this portion of Defendant's Motion in Limine.
I. References to Subject Property as 12.2 Acres
Defendant seeks to exclude evidence, argument, or inferences referring to the subject property as consisting of 12.28 acres. (Br. Supp. Def.'s Mot. Limine at 9-10.) According to Defendant, Mr. Wilson "appraised the subject property consisting of only 12.28 acres of land," appraised "Defendant's two rental homes (each on 1 acre) as separate tracts of land, even though they are contiguous to the 12.28 acres, and unified in both ownership and use," and "ignore[d] altogether the 8 acres Defendant owns on the south side of Water Tank road, even though they are also unified in both ownership and use." (Id. ) Defendant contends that "all of the 20.28 acres of land owned by [Defendant] are unified in their residential use, and the presence of a public road between the 14.28 acres on one side, and the 8 acres on the other, is a benefit to that unified use, allowing lots to be subdivided on both sides." (Id. at 10.)
Plaintiff opposes this portion of Defendant's Motion. (Resp. Def.'s Mot. Limine at 12-14.) Plaintiff notes that Defendant's "argument contradicts the uncontroverted facts of this case." (Id. at 12.) Plaintiff points out that Defendant stipulated to a map that included only three parcels, not all five of Defendant's parcels. (Id. ) Plaintiff also notes that Defendant used one of those parcels in the map, the subject property, as a farm, and used the other two parcels as residential properties. (Id. at 12-13.) Plaintiff argues that there is no unity of use among the parcels, and that the parcels cannot be considered one single, larger tract. (Id. at 13.) Plaintiff also notes that the other two parcels are not part of the map and are located across a public roadway, and that Defendant cannot legally claim damages for those properties. (Id. ) Plaintiff further argues that Defendant failed to identify sufficient evidence to rebut the presumption that the subject property's highest and best use was for agricultural purposes. (Id. at 13-14.) Plaintiff also notes that Defendant cannot meet this burden because he has no expert testimony. (Id. at 14.)
In his reply, Defendant argues that he does not consider all of his property to be the subject property in this case. (Reply Supp. Def.'s Mot. Limine at 10.) Defendant contends that he "acknowledges that his 22.79 acre tract which includes his personal residence, is separate from, and used differently than the rest of his property," while "[h]is remaining property, including the 8.29 acres across water tank road, all share[s] the same [characteristics], such as being cleared, graded, adjacent to public roads, with access to public utilities, that make it ready for immediate subdivision and residential construction." (Id. ) Defendant contends that he did not stipulate to a *1335 map showing that he used Tax Parcel 021 083 as a farm. (Id. at 11.) According to Defendant, "[t]he relevant evidence to show the feasibility of a residential use of [Defendant's] property is already apparent on the ground, where two homes have already been constructed and occupied." (Id. )
The Court denies this portion of Defendant's Motion. First, this argument really is an untimely Daubert challenge to Mr. Wilson's expert testimony. Second, Defendant himself stated in his responses to Plaintiff's interrogatories that the subject property was used for agricultural purposes. (Resp. Interrog. 7.) Defendant has not demonstrated that his response to the interrogatories was simply intended to apply to the parcel that contains his residence. Third, there is no unity of use among the three properties listed in the stipulated map because Defendant used two parcels for residential use and one for agricultural purposes. Fourth, Defendant did not include the other two parcels in the stipulated map, and those parcels are too separate from the subject property to allow Defendant to claim damages for the parcels. Fifth, as discussed infra, Defendant will not be able to meet his burden to show that the highest and best use of the subject property was for anything other than agricultural purposes. The Court therefore denies this portion of Defendant's Motion in Limine.
J. The Flood Map
Defendant also moved to exclude the Flood Map, contending that Plaintiff "has not designated any witness, or disclosed any evidence showing that the Flood Plain map, FIRM Panel 0042D, is either accurate or that the elevation of the subject property lies below the BFE established thereby." (Br. Supp. Def.'s Mot. Limine at 10-11.) According to Defendant, "[i]n the absence of such information, the map itself is hearsay and irrelevant," and it "would only serve to confuse the jury and likely prejudice [Defendant] at trial." (Id. at 11.) Plaintiff opposes this portion of Defendant's Motion, noting that the FEMA map is a public record and Mr. Wilson will discuss its significance. (Resp. Def.'s Mot. Limine at 14.) In his reply, Defendant argues that "the FEMA map in this case is irrelevant unless the base flood elevation is known." (Reply Supp. Def.'s Mot. Limine at 12.)
The Court denies this portion of Defendant's Motion. First, the FEMA map is a public record and subject to a hearsay exception. Second, given Mr. Wilson's anticipated testimony, the map is not irrelevant. Third, Defendant has not shown that the map is so unfairly prejudicial as to warrant its exclusion under Rule 403. The Court therefore denies this portion of Defendant's Motion in Limine.
K. Public Purpose or Public Value of the Transmission Line
Defendant seeks to exclude evidence, argument, or inferences concerning the public purpose or public value of the transmission lines. (Br. Supp. Def.'s Mot. Limine at 11.) According to Defendant, "[a]rguments as to public value of [Plaintiff's] electric transmission lines, their public purpose, or [Plaintiff's] public duty to provide utility service are irrelevant." (Id. ) Alternatively, Defendant argues that this "evidence or argument would only serve to bolster [Plaintiff] before the jury and should be excluded because its prejudicial effect would substantially outweigh any nominal probative value it might have." (Id. ) Plaintiff opposes this portion of the Motion. (Resp. Def.'s Mot. Limine at 14-16.) In his reply, Defendant renews his arguments in support of this portion of his Motion. (Reply Supp. Def.'s Mot. Limine at 12-13.)
*1336 The Court denies this portion of Defendant's Motion in Limine. Although Defendant correctly notes that the sole issue for trial is just compensation, the public purpose and public value of the transmission line are intrinsic aspects of this case. Such issues are not irrelevant, and they are not unduly prejudicial to Defendant so as to warrant exclusion under Rule 403. The Court therefore denies this portion of Defendant's Motion in Limine.
III. Plaintiffs Motion in Limine
Plaintiff moved to exclude sixteen categories of evidence, including: (1) "expert testimony offered by Defendant or any other undisclosed expert for whom Defendant did not make timely and complete Rule 26(a)(2) disclosures" (Pl.'s Mot. Limine at 3); (2) "testimony of all witnesses for whom Defendant failed to make Rule 26(a)(1) disclosures" (id. ); (3) "documents that Defendant failed to make Rule 26(a)(1) disclosures in response to Plaintiff's discovery requests" (id. ); (4) "all evidence at trial relating to a highest and best use of Defendant's land for purposes other than agricultural use and valuation of his land based on any use other than agricultural use" (id. ); (5) "tax assessments and tax cards" (id. ); (6) Plaintiff's deposit (id. ); (7) "evidence related to negotiations and settlement offers" (id. ); (8) "evidence related to Plaintiff's condemnation of other properties" (id. ); (9) "evidence related to the Hobgood condemnation" (id. ); (10) "maps, diagrams, photographs, videos, and drawings that depict unrelated parcels" (id. at 4); (11) "expert reports" (id. ); (12) "argument and evidence relating to the health, age, and physical condition of [Defendant]" (id. ); (13) "unaccepted offers to purchase property" (id. ); (14) "post-taking plans by Defendant to develop his property" (id. ); (15) "non-unity of title and non-unity of use properties" (id. ); and (16) "argument and evidence relating to alleged electromagnetic fields (EMFs), transmission structure noise, pesticide spraying measures, and falling towers" (id. ). This memorandum discusses those categories in turn.
A. Expert Testimony for Undisclosed Experts
Plaintiff argues that the Court should exclude expert testimony from individuals that Defendant failed to disclose in a timely fashion. (Br Supp. Pl.'s Mot. Limine (Docket Entry No. 61-1) at 2-5.) Plaintiff notes that the Court previously precluded Defendant from offering expert testimony at trial because Defendant failed to make timely expert disclosures. (Id. at 2.) Plaintiff argues that Defendant is attempting to circumvent that ruling and "has identified at least four expert witnesses as 'fact' witnesses in the Consolidated Pretrial Order," including "Appraisers B. Penn and L. Thomas, and professional engineers W. Phillips[ ] and C. Rann." (Id. ) Plaintiff states: "Defendant's intent to call these individuals as experts is evident from Defendant's attempt to make incomplete Rule 26(a)(2) expert disclosures (no reports were ever provided) for these four witnesses long after the deadline to do so had run and after the Court's Order precluding Defendant from presenting expert testimony, as well as Defendant's identifying their 'qualifications' on his exhibit list." (Id. at 3 (citations omitted).) Plaintiff further argues that the Court should exclude any expert testimony from Defendant because he failed to identify or make required expert disclosures for himself. (Id. at 3-4.) Plaintiff notes that, "[w]hile Defendant may offer opinion testimony regarding the subject property as its landowner and its value based upon his experience concerning improvements, uses, and so forth, he should not be permitted to testify regarding his subjective personal value of the property or frustration of plans; his *1337 valuation of property based on subdivided residential land values; or any testimony concerning inadmissible hearsay." (Id. at 5 (footnote omitted).)
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 2-11.) Most of Defendant's response consists of arguments that Defendant previously raised. (Id. ) Defendant contends that, under the Fifth Amendment, he is entitled to just compensation for the taking of his property, and that presenting expert testimony is key to exercising his Fifth Amendment rights. (Id. at 2-5.) Defendant also argues that Federal Rule of Civil Procedure 71.1 supports allowing him to introduce expert testimony. (Id. at 5-6.) Defendant further contends that Plaintiff failed to point to any specific expert testimony that Defendant himself might give. (Id. at 7.) Moreover, Defendant argues that he is entitled to offer his own opinion testimony concerning his property and its value. (Id. at 7-10.) Defendant further asserts that there was no need for him to disclose his own expert testimony in this case because discovery closed before the Court excluded his expert witness, and he had no opportunity to make the disclosures after the Court entered that Order. (Id. at 10.) Defendant also complains that Plaintiff did not pursue available discovery options, including deposing Defendant. (Id. at 10-11.)
In its reply, Plaintiff notes that Rule 71.1 does not preclude the Court from excluding expert testimony from Defendant's witnesses. (Reply Supp. Pl.'s Mot. Limine (Docket Entry No. 69) at 3-4.) Plaintiff points out that it does not "seek exclusion of otherwise admissible lay testimony offered by Defendant regarding his property or on the issue of just compensation." (Id. at 4.)
The Court grants this portion of Plaintiff's Motion in Limine. The Court previously entered an Order precluding Defendant from offering expert testimony at trial because Defendant failed to make expert disclosures in a timely fashion. (Order of Dec. 5, 2017 (Docket Entry No. 38).) The Court denied Defendant's Motion for Reconsideration relating to the Order excluding expert testimony. (Order of Dec. 18, 2017 (Docket Entry No. 44).) Attempting to get another bite at the apple, Defendant filed a Motion to Reopen and Extend Discovery, which the Court also denied. (Mot. Extension Time (Docket Entry No. 50); Order of Apr. 2, 2018 (Docket Entry No. 51).)[5] The Court *1338 therefore grants this portion of Plaintiff's Motion in Limine to the extent that it seeks to preclude Defendant from offering expert testimony or from attempting to circumvent the Court's exclusion of his expert testimony by characterizing his expert witnesses as fact witnesses.
To the extent that Defendant himself seeks to offer expert testimony, the Court precludes Defendant from offering such testimony. Federal Rule of Civil Procedure 26(a)(2) requires that a party seeking to present expert testimony make certain disclosures. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(D) provides, in relevant part: "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Federal Rule of Civil Procedure 37(c)(1) provides:
If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).
Fed. R. Civ. P. 37(c)(1). To the extent that Defendant failed to disclose his own proposed expert testimony, the Court excludes this testimony. The testimony to be excluded includes testimony concerning: (1) the ability to construct a residential development on the property; (2) the highest and best use of the property; comparable sales analysis; (3) appraisal methodology; and (4) repeating other valuations of the property.
To the extent that Defendant may attempt to paint his testimony as lay testimony based on his own specialized knowledge and experience, the Court rejects that attempt. In 6.09 Acres, the court recognized that "Rule 702 does not always apply to opinion testimony by a witness as it relates to the value of his own land or property," and that such testimony might qualify as lay opinion testimony under Rule 701. 6.09 Acres, 140 F.Supp.3d at 1240-41. The court explained:
Rule 701 does not distinguish between expert and lay witnesses, but rather between expert and lay testimony. Thus, within the testimony of a single witness, one opinion may fall under Rule 701 and another under Rule 702. And distinguishing between lay and expert opinion testimony in this respect is critical. In contrast to expert opinion testimony, lay opinion testimony admissible under Rule 701 is not subject to the gatekeeping requirements of Daubert, or to expert disclosure requirements under rules of court. This is so because [l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events. However, courts must be vigilant to ensure that the gatekeeping requirements of Rule 702 are not evaded through the simple expedient of proffering an expert in lay witness clothing.
Accordingly, that Rule 701 may authorize a witness to give a lay opinion on the value of his property does not mean that a landowner has carte blanche to espouse any opinion he pleases on the value of his land, free from the constraints *1339 of Rule 702 and Daubert. If an owner's testimony on value is based not upon commonly understood considerations of worth flowing from his perceptions and knowledge of his property but instead upon technical or specialized knowledge more broadly, it crosses into expert testimony for purposes of Rule 702 and cannot be admitted under Rule 701(c).
140 F.Supp.3d at 1241-42 (emphasis and alteration in original) (internal quotation marks and citations omitted). Defendant cannot evade his disclosure requirements by attempting to disguise as lay testimony what is really expert testimony.
Further, 6.09 Acres does not stand for the proposition that no expert disclosure requirements are required in a condemnation action when the landowner himself offers expert testimony. The landowners in that case made expert disclosures, and the Government challenged the sufficiency of the disclosures. 140 F.Supp.3d at 1244. The court noted that, insofar as the landowners' opinions "might qualify as lay opinion under [Rule] 701, Defendants need not provide a Rule 26(a)(2) expert disclosure at all." Id. (citations omitted). The court further stated, "even if their testimony encompasses expert opinions, disclosure under Rule 26(a)(2)(C) for non-retained experts is considerably less extensive than the report required by Rule 26(a)(2)(B) for retained experts, and [c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Id. (alteration in original) (internal quotation marks and citations omitted). The court found that the disclosures the defendants provided "were adequate to put the Government on notice of the facts and opinions upon which [the defendants] were expected to testify." Id. In contrast, Defendant made no Rule 26(a)(2)(C) disclosures at all here, and he certainly did not put the Government on notice of the facts and opinions upon which he expected to testify sufficiently early in the litigation to allow the Government to test those facts and opinions. As such, the opinions are subject to exclusion. This ruling, however, will not prevent Defendant himself from offering lay testimony as to the value of his land.
B. Witnesses for Whom Defendant Did Not Make Rule 26(a)(1) Disclosures
Plaintiff also argues that the Court should exclude testimony of all witnesses whom Defendant failed to disclose. (Br. Supp. Pl.'s Mot. Limine at 5-6.) Plaintiff notes that Defendant's proposed witness list identifies nine "fact" witnesses whom Defendant may call at trial, but Defendant failed to disclose those witnesses in his initial disclosures: (1) B. Penn; (2) L. Thomas; (3) W. Phillips; (4) C. Rann; (5) D. Postelle; (6) J. Scott; (7) B. Hageman; (8) G. Temples; and (9) B. Stepp. (Id. ) Plaintiff argues that Rule 37(c)(1) warrants excluding testimony from those witnesses.
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 11-14.) Defendant complains that he "had no need to produce or qualify these witnesses prior to the Court's ruling excluding Defendant's use of expert testimony and no ability to do so after the ruling." (Id. at 11.) According to Defendant, Plaintiff "is asking the Court to punish [Defendant] a second time for the same discovery violation." (Id. ) Defendant also argues that he disclosed the names and addresses of the witnesses in the Pretrial Order, and that Plaintiff failed to object to the witnesses based on Rule 26(a)(1). (Id. at 12.) Defendant complains that he disclosed the witnesses in January 2018, and that Plaintiff "has done nothing during the ensuing seven months to discover their testimony, *1340 to conduct a deposition, or otherwise to object to their use at trial." (Id. ) Defendant argues that Plaintiff has unfairly "waited until the eve of trial to raise objections to Defendant's remaining witnesses and evidence." (Id. )
In its reply, Plaintiff notes that Defendant has misconstrued Rule 26(a)'s requirements, as well as the purposes of the proposed consolidated pretrial order. (Reply Supp. Pl.'s Mot. Limine at 5.) Plaintiff also observes that "the default provisions of Rule 26(a)(2)(3) do not apply" here because the Court ordered that the disclosures be made otherwise. (Id. ) According to Plaintiff, even if those default provisions applied, "no objections under Rule 26(a)(3)(B) are applicable to this case because there is no deposition testimony or designation under Rule 32(a) meriting objection, only nine undisclosed witnesses for whom Defendant made no Rule 26(a)(1)(A) disclosures, and Plaintiff objected to these undisclosed witnesses in the [proposed consolidated pretrial order]." (Id. at 6.) Plaintiff notes that the proposed consolidated pretrial order is not a "substitute for discovery, and the period for discovery in this case expired long before the parties filed the [proposed consolidated pretrial order]." (Id. )
The Court grants this portion of Plaintiff's Motion in Limine. Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures, and provides, in relevant part: "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims and defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1). Rule 26(e)(1)(A) requires a party to supplement its initial disclosures in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1), in turn, states, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a)..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The initial requirements of Rule 26 are fundamental to the orderly, efficient, cost-effective and fair litigation of civil cases and the Rule 37(c)(1) remedies are directed at sanctioning a litigant for failing to provide or supplement the most basic information necessary to efficiently and fairly litigate a dispute." Davis v. Green, No. 1:12-CV-3549-WSD, 2015 WL 3505665, at *2 (N.D. Ga. June 3, 2015). Indeed:
[M]ere familiarit[y] with a witness does not justify [a party's] failure to comply with his discovery obligations. The disclosure of people who have knowledge of the facts of a case are fundamental and critical to civil litigation. It is these disclosures that put a party on notice of the evidence that it must understand and with which it may have to contend at trial. The disclosures are essential to develop a reasoned, cost-effective plan for discovery. It allows a party to assess its case and the end result is often an early resolution to the dispute. [The plaintiff's] refusal to embrace these litigation obligations thwarted the purpose of these discovery rules.
Id. (second alteration in original) (internal quotation marks and citation omitted). Courts have excluded testimony from witnesses where parties failed to identify the witnesses in their initial disclosures. Id. at *2-3.
Defendant cannot circumvent the above rules by arguing that he disclosed the witnesses *1341 in the Consolidated Pretrial Order. By the time the Parties filed their Consolidated Pretrial Order, discovery had closed, and Plaintiff no longer had an opportunity to discover information about these witnesses.
To the extent that Defendant relies on Rule 26(a)(3)(B), that argument also is unavailing. Rule 26(a)(3)(B) provides:
Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii) ; and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made-except for one under Federal Rule of Evidence 402 or 403 -is waived unless excused by the court for good cause.
Fed. R. Civ. P. 26(a)(3)(B). That Rule does not assist Defendant here because the Court ordered that the disclosures be made otherwise, and the plain language of Rule 26(a)(3)(B) did not require Plaintiff to object to the nine witnesses. In any event, Plaintiff objected to the nine witnesses. (Consolidated Pretrial Order (Docket Entry No. 47), Attach. F-2 at 3-4.) Rule 26(a)(3)(B) does not warrant denying this portion of Plaintiff's Motion in Limine.
C. Documents Not Disclosed
Plaintiff complains that Defendant's Exhibit List includes 163 documents and thirty-four learned treatises[6] that Defendant failed to list in his initial disclosures or to disclose during discovery. (Br. Supp. Pl.'s Mot. Exclude at 7-10.) Plaintiff notes that these documents include: (1) a declaration of taking; (2) stipulations filed on May 3, 2017; (3) TVA documents, including plans and profiles; (4) TVA's April 2016 Final Environmental Assessment; (5) photographs of the subject property; (6) aerial photographs of the subject property; (7) information about the subject property available on a public website; and (8) the Unified Land Development Code for Gordon County. (Id. at 7.) According to Plaintiff, Defendant stated that he would supplement his initial disclosures, but he never did. (Id. ) Plaintiff also argues that Defendant never actually produced the documents or materials in response to Plaintiff's request for production of documents, and, indeed, produced nothing other than a drone video to Plaintiff.[7] (Id. at 7-8.) Plaintiff contends that this failure to disclose the materials "before the close of discovery is a blatant violation of Rule 26(a)'s disclosure requirements and greatly prejudices [Plaintiff]," resulting in "an automatic exclusion." (Id. at 9.)
Defendant objects to this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 14-16.) According to Defendant, Plaintiff had the list of exhibits for more than seven months but failed to object. (Id. at 14.)
*1342 Defendant contends that Plaintiff "never even let [him] know that it had not received the documents, prior to filing the motion," and notes that his counsel promptly provided missing documents when Plaintiff brought such matters to his counsel's attention. (Id. ) Defendant further argues that his counsel produced most of the documents in other cases involving Plaintiff. (Id. at 15.) According to Defendant, allowing Plaintiff to raise this objection now "is unfair and severely prejudicial." (Id. )
In its reply, Plaintiff notes that "service of discovery in a separate pending matter, made after the close of discovery in another matter, is not timely or appropriate service of discovery and Defendant cites no authority supporting this contention." (Reply Supp. Pl.'s Mot. Limine at 7.) Plaintiff contends that it "bears no burden or duty to advise Defendant of his refusal or neglect to provide discovery in a timely manner, particularly ... after discovery has closed and after the Court has excluded Defendant's evidence and exhibits." (Id. (footnote omitted).) Plaintiff observes that, to the extent that Defendant contends that the documents were attached as exhibits to Bruce Penn's report, Defendant never provided Plaintiff with a copy of that report in this case, and Defendant cannot present expert materials without an expert. (Id. at 7 n. 6.)
Rule 26(a)(1)(A)(ii) governs initial disclosure of documents and tangible things, and requires a party to disclose "a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26(e) requires a party to supplement its initial disclosures. Fed. R. Civ. P. 26(e)(1). Rule 37(c)(1), in turn, provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a)..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless." King v. Passmore, Case No. 2:16-CV-00192-JEO, 2017 WL 5202886, at *2 (N.D. Ala. Apr. 17, 2017). Courts have found that failure to disclose documents and exhibits warrants exclusion of the materials. Id. Moreover, Plaintiff contends that Defendant previously "stated to the Court that photographs of the subject property were in his possession on or before May 15, 2017 - when Defendant's initial disclosures were filed," and that Defendant's "mere listing of [his items] in the initial disclosures or Consolidated Pretrial Order is no substitute for timely service." (Id. at 8.)
Defendant failed to disclose the documents and exhibits at issue in a timely fashion, and the fact that Plaintiff may have the documents and exhibits from related actions does not excuse this failure. Simply put, production of these documents in separate cases, after the conclusion of discovery in this case, does not satisfy Defendant's obligations. Plaintiff is not required to advise Defendant of his discovery failures. The Court therefore grants this portion of Plaintiff's Motion in Limine, and it precludes Defendant from introducing at trial documents that Defendant failed to produce to Plaintiff during discovery.[8] This ruling does not extend to documents *1343 such as plats or plans that Plaintiff might have furnished to Defendant, to the extent that such documents are otherwise admissible.
D. Highest and Best Use
Plaintiff also argues that the Court should exclude evidence at trial relating to a highest and best use of Defendant's land for purposes other than agricultural use and the valuation of his land based on any use other than agricultural use. (Br. Supp. Pl.'s Mot. Limine at 10-14.) Plaintiff notes that the land had been used as a farm for ten years prior to November 10, 2016, the date of the taking. (Id. at 10.) Plaintiff contends that "Defendant has not identified sufficient evidence to rebut the presumption that his land's highest and best use was its actual use as of the date of taking." (Id. (citations omitted).) Plaintiff argues that Defendant bears the burden to make this showing by a preponderance of the evidence. (Id. at 11.) According to Plaintiff, "in condemnation proceedings, the trier of fact can only consider alternative uses for which the land can reasonably be developed in the near future; the mere possibility of a more profitable use may not be considered." (Id. ) Plaintiff argues that the Court should not consider "evidence of a landowner's proposed future use and valuation opinions based on that proposed use" unless the landowner makes a prima facie showing that the use is practicable and that there is a reasonable likelihood that the land would be used for that purpose in the reasonably near future. (Id. at 12.) According to Plaintiff, to make this showing, a landowner "must introduce evidence showing the reasonably probable and legal use of [the] vacant land or improved properly, is physically possible, appropriately supported, financially feasible, and that results in the highest value." (Id. at 13 (alteration in original) (internal quotation marks and citation omitted).) Plaintiff contends that this showing "requires a showing of market demand and objective evidence sustaining [the appraiser's] market demand analysis." (Id. (alteration in original) (internal quotation marks and citation omitted).) Plaintiff argues that "Defendant has no expert who performed any such study, and even if Defendant were competent to introduce such evidence, he did not do so in his response to written discovery and instead indicated that he would rely on a prospective expert to provide this information." (Id. (citation omitted).) Plaintiff contends that "Defendant therefore cannot meet his burden of introducing objective evidence that would show a market for residential property sufficient to allow the jury to consider valuation opinions based on that use." (Id. at 14.)
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 16-21.) According to Defendant, "the residential use of Defendant's property is an accomplished fact." (Id. at 17.) Defendant bases this argument on a contention that "[t]he subject property consists, in part, of 14.28 acres which is cleared, graded, all utilities in place, and adjacent to public roads." (Id. Defendant argues that the Court should not accept Plaintiff's argument that his discovery responses demonstrate that the use of the subject property is agricultural. (Id. at 19.) Defendant contends that the subject property "contains two residences and no farm," and that the only property he uses for farming consists of the two tracts across the road. (Id. ) Defendant argues that the Parties never stipulated as to what constituted the subject property. (Id. at 20.) According to Defendant, if the Court excludes the properties across the road from the subject property, the subject property is currently used for residential purposes. (Id. ) Defendant claims that he has two houses on the property now. (Id. )
*1344 In its reply brief, Plaintiff responds that "Defendant offers no authority in support of his contention that a lay witness can offer" the evidence that Defendant proposes to present to show residential use. (Reply Supp. Pl.'s Mot. Limine at 9.) Plaintiff points out that Defendant failed to offer anything other than argument to show that his property was used for residential purposes. (Id. ) Plaintiff notes that Defendant had no written plans to develop the land crossed by the transmission line at the time of the taking, and that he was using the parcel for farming on that date. (Id. at 10.) Plaintiff also observes that Defendant failed to serve any evidence in a timely fashion "showing that his land should be valued based on a use other than its actual use: agricultural." (Id. ) According to Plaintiff, Defendant simply has not met his burden to introduce "objective evidence showing a market for residential property sufficient to allow the jury to consider valuation opinions for that use." (Id. at 10-11.)
It is undisputed that, under federal condemnation law, the United States can take private property for public use upon paying just compensation to the owner of the property. United States ex rel. Tenn. Valley Auth. v. Powelson, 319 U.S. 266, 278-80, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). Determining just compensation involves calculating the property's fair market value as of the date of taking. United States v. 320.0 Acres of Land, More or Less in Monroe Cty., Fla., 605 F.2d 762, 781 (5th Cir. 1979). "[F]air market value takes into consideration '[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future ... to the full extent that the prospect of demand for such use affects the market value while the property is privately held.' " Id. (second and third alteration in original) (quoting Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934) ). "Thus, 'just compensation' is not limited to the value of the property as presently used, but includes any additional market value it may command because of the prospects for developing it to the 'highest and best use' for which it is suitable." Id."The highest and best use of a parcel is the reasonably probable and legal use of vacant land or improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value." United States ex rel. Tenn. Valley Auth. v. An Easement and Right-of-Way Over 6.09 Acres of Land, More or Less, in Madison Cty., Ala., 140 F.Supp.3d 1218, 1232 (N.D. Ala. 2015) (internal quotation marks and citation omitted). Federal law, rather than state law, governs just compensation in a federal condemnation action. United States v. Miller, 317 U.S. 369, 379-80, 63 S.Ct. 276, 87 L.Ed. 336 (1943).
An award of just compensation in a federal condemnation action includes "only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent," and "[i]ts measure is the amount of that equivalent." Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). "[F]air market value does not include the special value of property to the owner arising from its adaptability to his particular use." United States v. 564.54 Acres of Land, 441 U.S. 506, 511, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979). "[N]ontransferable values arising from the owner's unique need for the property are not compensable." Id. at 514, 99 S.Ct. 1854. Frustration of the owner's plans is not compensable in a condemnation case. United States ex rel. Tenn. Valley Auth. v. Easement & Right of Way 100 Feet Wide Over Certain Lands in Gibson Cty., Tenn., 447 F.2d 1317, 1320 (6th Cir. 1971).
*1345 Generally, the property's current use is presumed to be its highest and best use. An Easement and Riqht-of-Way Over 6.09 Acres of Land, More or Less, in Madison Cty., Ala., 140 F.Supp.3d at 1233. The landowner bears the burden of "establishing a highest and best use other than the existing use." Id. Courts "have an obligation to screen the proffered potential uses and exclude from the jury's consideration evidence those which have not been demonstrated to be practicable and reasonably probable uses." Id. (internal quotation marks and citation omitted). "That is, the court is to exclude evidence of proposed future uses unless the landowner makes a preliminary, prima facie showing that such use [is] practicable and that there [is] reasonable likelihood that the land would be so used in the reasonably near future." Id. (alterations in original) (internal quotation marks and citation omitted). Further, "it is generally accepted that there must be demonstrated an actual profitable use or a market demand for the prospective use." United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn., 821 F.3d 742, 754 (6th Cir. 2016) (internal quotation marks and citation omitted).
Defendant's argument is based on his mistaken assumption that the subject property includes the two tax parcels with houses. As previously noted, it does not. Tax data indicates that the three parcels are used separately and for different purposes. Defendant himself placed the subject property in a conservation easement, arguing that it was agricultural property. The three parcels do not share a unity of use, and they should not be considered all one parcel for just compensation purposes.
Here, Defendant has not met his burden to show that residential use of the subject property is practicable and that there is a reasonable likelihood that the subject property would be used for residential purposes in the near future. The subject property was zoned for, and used for, agricultural purposes at the time of taking. Defendant failed to timely serve or identify any evidence showing that his land should be valued based on a use other than its actual use as agricultural property. Defendant failed to disclose, in a timely fashion, any expert who performed a study or analysis showing a demand for a different use such as residential development. Defendant, as a lay witness, may not give this testimony. Even if Defendant could give such testimony, the Court would exclude it because Defendant failed to disclose this testimony in a timely fashion during discovery. Defendant simply failed to make the preliminary showing required for the jury to consider other possible uses, and the Court precludes Defendant from offering evidence or argument at trial relating to a highest and best use of Defendant's land for purposes other than agricultural use and valuation of his land based on any use other than agricultural use.
For the reasons discussed above, Defendant may not offer evidence or argument at trial relating to a highest and best use of the subject property for purposes other than agricultural use or valuation of the subject property based on any use other than agricultural use. The Court therefore grants this portion of Plaintiff's Motion in Limine.
E. Tax Assessments and Tax Cards
Plaintiff also seeks to exclude evidence relating to tax assessments and tax cards. (Br. Supp. Pl.'s Mot. Limine at 13-14.) Defendant opposes this portion of Plaintiff's Motion, arguing that tax cards contain much more information than just tax values. (Resp. Pl.'s Mot. Limine at 21.) Defendant, however, agrees that "property tax valuations are not admissible as evidence of value." (Id. )
*1346 The Court grants this portion of Plaintiff's Motion in Limine with respect to tax card valuations. This evidence is not admissible as evidence of value. See Bowie Lumber Co. v. United States, 155 F.2d 225, 228 (5th Cir. 1946) ("The great weight of authority holds that, except as declarations against interest, assessments are not admissible as evidence of value in condemnation proceedings.")[9] ; see also United States v. Certain Parcels of Land in Arlington Cty., 261 F.2d 287, 290 (4th Cir. 1958) (finding that evidence of assessed value for tax purposes was not admissible to determine valuation in a condemnation proceeding). The tax cards, however, may contain other relevant information that is admissible, and the Court declines to exclude tax cards in their entirety at this point. The Court denies without prejudice the portion of the Motion relating to materials on the tax cards other than tax valuations, and, if necessary, it will revisit this issue at trial. The Court's ruling on this issue applies to both Parties.
F. Plaintiffs Deposit
Plaintiff further requests that the Court exclude evidence relating to its deposit. (Br. Supp. Pl.'s Mot. Limine at 14-15.) Defendant does not oppose this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 21.)
The Court grants this portion of Plaintiff's Motion in Limine. First, Defendant does not oppose it. Second, just compensation is a matter for the trier of fact to determine, and the amount of the deposit is simply an estimate of the amount due paid to give the Government immediate possession of the property. United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336 (1943) ("The payment is of estimated compensation, it is intended as a provisional and not a final settlement with the owner; it is a payment on account of compensation and not a final settlement of the amount due." (internal quotation marks omitted) ); Instructions to Comm'rs, 61 F.R.D. at 520 ("The purpose of such deposit is to give the Government immediate possession of the property and to relief it of the burden of paying interest on the amount deposited, and also to give the property owner the immediate use of the money. The amount deposited is not to be construed as either an admission of value by the Government nor a limit of value as to the landowner. The deposit of estimated just compensation is not evidence of value, has no bearing whatever on value, and will be disregarded by you in reaching your decision as to the value of the property taken. You are required to fix your value without any reference at all to the amount deposited." (footnote omitted) ); United States v. 342.81 Acres of Land, More or Less, in Hall Cty., Ga., 134 F.Supp. 430, 432 (N.D. Ga. Aug. 6, 1955) ("The deposit is merely an estimate and the amount finally determined to be just compensation may be more or less than the amount of the deposit." (citation omitted) ).
G. Negotiations and Settlement Offers
Plaintiff also moves to exclude evidence relating to pre-condemnation negotiations and settlement offers. (Br. Supp. Pl.'s Mot. Limine at 15.) Defendant does not oppose this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 21.)
The Court grants this portion of Plaintiff's Motion in Limine. First, Defendant does not oppose it. Second, evidence of *1347 pre-condemnation settlement offers and negotiations is inadmissible as evidence of value in this condemnation proceeding. Wash. Metro. Area Transit Auth. v. One Parcel of Land in Montgomery Cty., Md., 548 F.2d 1130, 1131 (4th Cir. 1977) (per curiam) ("We hold that a landowner who rejects a pre-condemnation offer ... may not introduce that offer as proof of value when the government condemns the property."); Wash. Metro. Area Transit Auth. v. One Parcel of Land in Prince George's Cty., Md., 342 F.Supp.2d 378, 380-82 (D. Md. 2004) (precluding admission of a pre-condemnation settlement offer itself); Instructions to Comm'rs, 61 F.R.D. at 517 ("It is not permissible for a landowner to state or prove what he has been offered for the property involved, nor for him to prove an unaccepted offer to purchase made by one not a party to the suit." (footnote omitted) ). Compromise negotiations and settlement offers after the date of taking are inadmissible under Federal Rule of Evidence 408. Fed. R. Evid. 408.
H. Other Condemnations
Plaintiff requests that the Court exclude evidence of other condemnations. (Br. Supp. Pl.'s Mot. Limine at 16.) Defendant does not oppose this portion of Plaintiffs Motion. (Resp. Pl.'s Mot. Limine at 21.)
The Court grants this portion of Plaintiff's Motion in Limine. First, Defendant does not oppose it. Second, evidence of amounts paid in other condemnation proceedings would not be relevant to just compensation here. See United States v. 0.59 Acres of Land, 109 F.3d 1493, 1498 (9th Cir. 1997) (noting that "[t]he price paid by the condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land," unless "(1) the sale is voluntary or (2) the fact that parties were condemnor and condemnee was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings" (alteration in original) (internal quotation marks and citations omitted) ); United States v. 25.02 Acres of Land, More or Less, in Douglas Cty., Colo., 495 F.2d 1398, 1403 (10th Cir. 1974) ("Courts have recognized that forced sales - in condemnation proceedings - often involve compulsion, coercion or compromise and that a condemning party might be willing to give more than the property is worth, and the owner might be willing to take less than it is worth rather than undergo a lawsuit."); Instructions to Comm'rs, 61 F.R.D. at 518 ("While the prices paid in sales of similar property between private parties are admissible, the price the Government has paid for other property is not admissible in evidence and is incompetent to prove the market value of land under condemnation. Such sales are not a fair criterion of value for the reason that they are not free sales but are in the nature of a compromise to avoid a law-suit. Likewise, what the Government has offered for the property in condemnation or has offered for other property is not admissible in evidence and should not be considered in making your determination of just compensation for the property taken." (footnotes omitted) ). The Court's ruling on this portion of Defendant's Motion in Limine applies to all Parties.
In any event, Defendant may not claim damages based on injury to other property owners. See Campbell v. United States, 266 U.S. 368, 372, 45 S.Ct. 115, 69 L.Ed. 328 (1924) ("[T]he just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking");
*1348 United States ex rel. Tenn. Valley Auth. v. Stewart, 429 F.Supp. 658, 660-61 (E.D. Tenn. 1976) ("In any condemnation, incidental injury may be caused to adjoining property owners which must be suffered without remedy." (citation omitted) ); United States ex rel. Tenn. Valley Auth. v. Easement and Right-of-Way Over 1.0 Acre of Land, 248 F.Supp. 702, 703-04 (W.D. Tenn. 1965) ("[T]he owner cannot claim such damage to the extent that it is based on that part of the line not on its property.").
I. Hobgood Action
Plaintiff further seeks to exclude evidence relating to the Hobgood action. (Br. Supp. Pl.'s Mot. Limine at 16-17.) Defendant does not oppose this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 21.)
The Court grants this portion of Plaintiff's Motion in Limine. First, Defendant does not oppose it. Second, evidence relating to the Hobgood action is inadmissible because such evidence is not relevant to determining just compensation in this action.
J. Exhibits Concerning Unrelated Parcels
Plaintiff seeks to exclude maps, diagrams, photographs, videos, and drawings that depict unrelated parcels. (Br. Supp. Pl.'s Mot. Limine at 17-19.) Plaintiff notes that Defendant's proposed list of trial exhibits includes tax and real estate records for other parcels of land. (Id. at 17.)
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 21-23.) Defendant argues that this Motion is overly broad and that Plaintiff "has not identified a single map, photo, or the like, which it objects to," but simply seeks an inappropriate categorical exclusion of all such material. (Id. at 22.) Defendant also argues that motions in limine are disfavored. (Id. at 22-23.)
In its reply, Plaintiff argues that the maps, diagrams, photographs, and similar documents are not admissible because they "are inadmissible hearsay" and are irrelevant. (Reply Supp. Pl.'s Mot. Limine at 11.) Alternatively, Plaintiff contends that the danger of unfair prejudice and confusion substantially outweighs any probative value that these materials may have. (Id. at 11-12.) Plaintiff further notes that "evidence depicting transmission lines and/or the construction of transmission lines on property adjoining or nearby Defendant's land should be excluded on relevancy grounds. (Id. at 12.) Plaintiff observes that Defendant cannot receive compensation for the presence of transmission lines on other properties, and that depictions of such lines on other properties would be irrelevant. (Id. at 12-13.)
The Court grants this portion of Plaintiff's Motion in Limine. As an initial matter, to the extent that Defendant may contend that the materials constitute comparable sales information, the Court already has precluded Defendant from presenting expert testimony at trial. Moreover, the exhibits appear to consist of inadmissible hearsay.
Further, the exhibits are irrelevant, and any probative value that they may have would be substantially outweighed by the dangers of unfair prejudice, confusion, and misleading the jury. Specifically, the exhibits are irrelevant because a landowner may not recover for incidental injury to adjoining property owners. Campbell, 266 U.S. at 372, 45 S.Ct. 115 ; Stewart, 429 F.Supp. at 660-61 ; Easement and Right-of-Way Over 1.0 Acre of Land, 248 F.Supp. at 703-04. Thus, whether Plaintiff acquired easements across adjoining or neighboring land is irrelevant to the issue to be tried in this case--just compensation--and photographs and videos of Plaintiff's construction activities *1349 and transmission lines on unrelated properties are irrelevant to the just compensation issue. The Court therefore grants this portion of Plaintiff's Motion in Limine.
K. Expert Reports
Plaintiff argues that the Court should exclude expert reports, including appraisal reports, as inadmissible hearsay. (Br. Supp. Pl.'s Mot. Limine at 19.) Defendant does not oppose this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 23.)
The Court grants this portion of Plaintiff's Motion in Limine. First, Defendant does not oppose it. Second, expert reports are hearsay.
L. Defendant's Health, Age, and Physical Condition
Plaintiff also seeks to exclude evidence and arguments relating to Defendant's health, age, and physical condition, arguing that such evidence is irrelevant. (Br. Supp. Pl.'s Mot. Limine at 19.) Defendant opposes this portion of Plaintiff's Motion, arguing that this broad ruling is inappropriate for a motion in limine and that his physical condition speaks for itself. (Resp. Pl.'s Mot. Limine at 23.)
The Court grants this portion of Plaintiff's Motion in Limine. Defendant's age, health, and physical condition are not relevant.
M. Unaccepted Offers to Purchase Property
Plaintiff further requests that the Court exclude arguments and evidence relating to unaccepted offers to purchase property. (Br. Supp. Pl.'s Mot. Limine at 20.) Defendant opposes this portion of Plaintiff's Motion, arguing that, as a property owner, he is competent to testify as to the value of his property, and he may testify that purchase offers have been made to establish that a market exists for the property. (Resp. Pl.'s Mot. Limine at 23-25.)
The Court grants this portion of Plaintiff's Motion in Limine. "It is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value." United States v. Smith, 355 F.2d 807, 811 (5th Cir. 1966) ; see also Sharp v. United States, 191 U.S. 341, 349, 24 S.Ct. 114, 48 L.Ed. 211 (1903) ("Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject. Especially is this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them."); Jayson v. United States, 294 F.2d 808, 810 (5th Cir. 1961) ("This Court, as well as others, has held in numerous condemnation cases the landowner could not present evidence as to offers he had received from third parties."); United States v. An Easement and Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty., Ala., 140 F.Supp.3d 1218, 1257 (N.D. Ala. 2015) ("It is clear as a general rule ... that unaccepted offers are improper evidence by which to estimate value." (internal quotation marks and citation omitted) ); Instructions to Comm'rs, 61 F.R.D. 503, 517 (E.D. Tenn. 1974) ("It is not permissible or a landowner to state or prove what he has been offered for the property involved, nor for him to prove an unaccepted offer to purchase made by one not a party to the suit." (footnote omitted).
*1350 Where "there were discussions but no firm plans, speculation but no contracts," admitting such evidence "would be asking the jury to imagine the best possible use the landowner dreamed of, as opposed to one he was actually in a position to negotiate at the time of the taking." East Tenn. Natural Gas Co. v. 2.93 Acres in Wythe Cty., No. 4:02CV00179, 2007 WL 2688414, at *8 (W.D. Va. Sept. 13, 2007) (emphasis in original). Instead, "[e]vidence of the price paid for other comparable property must be confined to instances in which the transactions have been completed by an agreement between a seller and a buyer for the sale of the property for a stipulated price." Smith, 355 F.2d at 811.
Moreover, to the extent that the offers at issue are oral offers, testimony concerning the purported unaccepted oral offer would be hearsay if Defendant intends to offer the testimony for the truth of the matter. See Fed. R. Evid. 801(c) (defining hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement"). Hearsay is generally not admissible. Fed. R. Evid. 802. It does not appear that Defendant could show that a purported oral offer satisfies any hearsay exception.
The unaccepted offers also are subject to exclusion under Federal Rule of Evidence 403. That rule permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Certainly, the unaccepted offers would confuse the issues and mislead the jury.
For the reasons discussed above, testimony or evidence concerning unaccepted offers is not admissible. The Court therefore grants this portion of Plaintiff's Motion in Limine.
N. Post-Taking Plans to Develop the Property
Plaintiff also seeks to exclude evidence of Defendant's post-taking plans to develop his property, arguing that, as of the date of the taking, Defendant had not "prepared or recorded a plat or plan for such development." (Br. Supp. Pl.'s Mot. Limine at 21.) According to Plaintiff, although Defendant indicated that, prior to the taking, he had thought about building at least two more houses on the property to rent, he had no written plans to develop or sell his land. (Id. ) Plaintiff also notes that Defendant failed to produce "any survey, plat, sales projection, or income projection for development of his land." (Id. ) Plaintiff points out that the property was used for agricultural purposes as of the date of the taking. (Id. at 22.) Defendant opposes this portion of Plaintiff's Motion, arguing that he is entitled to show the highest and best use of his property. (Resp. Pl.'s Mot. Limine at 25-26.) In its reply, Plaintiff points out that Defendant's assertion that his property was used for residential purposes "contradicts his discovery responses," and it notes that "[a]s of the date of taking, Defendant had not prepared or recorded a plat or written plan for such development as required, and cannot now say he did so." (Reply Supp. Pl.'s Mot. Limine at 13.)
The Court grants this portion of Plaintiff's Motion in Limine. Federal law, not state law, governs just compensation in a federal condemnation action. Miller, 317 U.S. at 379-80, 63 S.Ct. 276. It is abundantly clear that an award of just compensation in a federal condemnation action includes "only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent,"
*1351 and "[i]ts measure is the amount of that equivalent." Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). "[F]air market value does not include the special value of property to the owner arising from its adaptability to his particular use." 564.54 Acres of Land, 441 U.S. at 511, 99 S.Ct. 1854. "[N]ontransferable values arising from the owner's unique need for the property are not compensable." Id. at 514, 99 S.Ct. 1854. Frustration of the owner's plans is not compensable in a condemnation case. Easement & Right of Way 100 Feet Wide Over Certain Lands in Gibson Cty., Tenn., 447 F.2d 1317, 1320 (6th Cir. 1971). Generally, a property's "best use is contemplated at the time of taking and not on the basis of some subsequent development." United States v. Improved Premises Located at N.W. Corner of Irving Place and Sixteenth Street, 359 F.Supp. 528, 533-34 (S.D.N.Y. 1973). Where a landowner has taken no affirmative steps before the date of taking to subdivide the condemned property, it is improper to attempt to value the property as subdivided residential land. See United States ex rel. Tenn. Valley Auth. v. Easement and Right of Way Over Certain Land in Catoosa Cty., Ga., 123 F.Supp. 886, 888 (N.D. Ga. 1954) (rejecting an attempt to value property "on a front foot basis and not based upon the basis of its fair market value if sold as one entire tract" where "[t]he property in question has never been subdivided even on paper"); see also United States v. An Easement and Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty., Ala., 140 F.Supp.3d 1218, 1250 (N.D. Ala. 2015) ("[F]ederal courts have often been reluctant to allow the lot method to be used to establish market value where the land has not actually been subdivided, and there has been little or no material preparation or development, rendering projections on subdivision and future sales more speculative, and sufficient sales of comparable undeveloped land exist." (collecting cases) ).
Courts also generally do not permit juries to consider plats that are prepared after the date of taking. One court observed:
Crotsley also attempted to admit a subdivision plan which divided his land into building lots. The plot plan was not admitted into evidence although Crotsley was allowed to testify as to the price he thought the property would sell for as a site for recreational land development. The court exercised its discretion to exclude the plan because it was drawn up in 1961, was never recorded, and was speculative in nature inasmuch as the landowner, after the expiration of a number of years, had only staked out the outer perimeter of the subdivision and cleared very little of the land. With such a subdivision plan in front of them upon which a number of building lots have been drawn to perfection each of which could have theoretically been sold at a profit to the landowner, it would be very easy for the jury to improperly attempt to determine the number of lots the land would produce and estimate a price for each lot in determining the fair market value of the entire tract. The jury's function was to determine what a purchaser would be willing to pay for the land in its present condition, not speculate as to what could have been done with the land in the future. The plot plan would have impeded rather than aided the jury in that function. Accordingly, in the court's considered opinion, the plot plan was properly excluded.
United States v. 633.07 Acres of Land. More or Less, in Huntingdon Cty., Commonwealth of Pa., 362 F.Supp. 451, 453-54 (M.D. Pa. 1973). Another court stated:
*1352 The jury are to value the tract of land and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. A speculator or investor, in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled, and the court should have drawn the attention of the jury to it, so as to have left no room for uncertainty on their part. They should have been told that they had nothing to do with the subdivision of this tract, the price of the lots, or the probability of their sale; but that they were to ascertain the fair selling value of the land before and after the entry by the railroad company, in order to determine the actual damage done to its owner.
United States v. 3.544 Acres of Land, More or Less, Situate in Philadelphia Cty., Pa., 147 F.2d 596, 598 (3d Cir. 1945) (internal quotation marks omitted).
Here, the subject property was used for agricultural purposes on the date of the taking, and Defendant had no written plan to develop his property as a subdivision or otherwise prior to the date of taking. Any post-taking plans to develop the property are inadmissible. As previously noted, Defendant's contention that his property is residential property arises from his improper belief that the subject property includes the two residential tracts. The Court therefore grants this portion of Plaintiff's Motion in Limine.
O. Non-Unity of Title and Non-Unity of Use Properties
Plaintiff further seeks to exclude evidence relating to properties that are not wholly-owned by Defendant or that were not used for the same purpose as the subject property. (Br. Supp. Pl.'s Mot. Limine at 22-24.) Plaintiff points out that here, "the parties stipulated that the permanent easement and right-of-way taken crosses a 12.28 acre parcel that is wholly owned by [Defendant]." (Id. (citations).) Plaintiff argues that just compensation in a condemnation action does not include compensation for adjoining parcels in which the landowner does not have complete unity of title, and evidence relating to non-unity of title properties is therefore irrelevant. (Id. at 23.) Alternatively, Plaintiff contends that such evidence, "even if marginally relevant, would be subject to exclusion since it could only cause confusion, waste of time and prejudice to Plaintiff." (Id. ) Plaintiff also notes that "there is no unity of use between the subject property (parcel 021-083) and Defendant's other wholly-owned, contiguous parcels (021-083A and 021-117)." (Id. at 24.) Plaintiff states that Defendant used the subject property for farming, while he used the other properties for residential purposes. (Id. )
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 26-28.) Defendant claims that Plaintiff based its Motion "on an incorrect description of [Defendant's] land, its use, and the stipulations negotiated between the parties at the beginning of the case." (Id. at 26-27.) According to Defendant, all of his property is used for residential purposes, and the Parties never stipulated as to what constituted the subject property. (Id. at 27.)
In its reply, Plaintiff points out that its "argument regarding unity of use (or the *1353 lack thereof) is consistent with Defendant's binding discovery response whereas Defendant's post-hoc argument is inconsistent with it." (Reply Supp. Pl.'s Mot. Limine at 14.) Plaintiff notes that Defendant has a conservation use assessment in place on the 12.28 acre tract, as well as on Tax Map Parcels 021 087 and 021 128 A. (Id. ) Defendant, however, has no such assessment in place on Tax Map Parcels 021 083 A and 021 117, which he used for residential purposes. (Id. )
The Court grants this portion of Plaintiff's Motion in Limine. In a condemnation action, loss of value in other property is not compensable unless there is complete unity in title to that other property. See United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943) ("As respect other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages; and unless the legislature so provides, as it may, benefits are not assessed against such neighboring tracts for increase in their value." (footnotes omitted) ); United States v. 87.30 Acres of Land, More or Less, 430 F.2d 1130, 1133-34 (9th Cir. 1970) (rejecting a claim for severance damages in connection with non-contiguous crop lands owned by the appellants' sons); United States ex re. TVA v. Stewart, 429 F.Supp. 658, 660 (E.D. Tenn. 1976) ("The central issue is whether any two or all three of tracts # 1-3 may be considered as one unit for the purposes of determining compensation, and this issue depends upon whether the requisite unity of title exists with respect to the tracts." (internal quotation marks and footnote omitted) ). Just compensation in a condemnation action does not include compensation for adjoining parcels in which the defendant does not have complete unity of title. See Stewart, 429 F.Supp. at 660-61 ("In any condemnation, incidental injury may be caused to adjoining property owners which must be suffered without remedy. The rule that such adjoining parcels may be considered as a unit with that affected by the condemnation where there is common ownership is, however, not merely one of equity."). Likewise, the lack of unity of use supports a conclusion that the property taken is not part of a single, larger tract. See United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty., Tex., 680 F.2d 388, 393 (5th Cir. 1982) ("Three factors are particularly helpful in ascertaining whether property taken is part of a single, larger tract: physical contiguity, unity of ownership, and unity of use. When an owner actually uses parts of what would otherwise constitute a unified tract for different or separate purposes, however, the parts may be held to be functionally separate tracts, though they are not physically separate. Integrated use is the key test for unity of a tract." (internal quotation marks, citations, and footnote omitted) ). In any event, even if such testimony and evidence were relevant, the Court excludes the testimony and evidence under Rule 403 because it would cause undue confusion, waste of time, and unfair prejudice to Plaintiff. The Court therefore grants this portion of Plaintiff's Motion in Limine.
P. EMFs and Other Issues
Plaintiff also seeks to preclude Defendant from producing "evidence and argument relating to the EMFs, transmission structure noise, pesticide spraying measures, and falling towers," arguing that "such evidence is immaterial and irrelevant to the issue of just compensation" and "would be intended to distract [the] jury and unfairly prejudice Plaintiff." (Br. Supp. Pl.'s Mot. Limine at 24-25.) According to Plaintiff, Defendant's voir dire questions and witness examinations in the Postelle trial, as well as Defendant's discovery *1354 requests in this action, raised those issues. (Id. at 25.)
Defendant opposes this portion of Plaintiff's Motion. (Resp. Pl.'s Mot. Limine at 28.) According to Defendant, "consequential or severance damages are based not only on the taking of land but also the use to which it will be dedicated," and he "is entitled to present evidence and argument concerning the physical attributes, features, and impacts of living beside an electric transmission line." (Id. (citation omitted).)
In its reply, Plaintiff argues again that "[t]his evidence is irrelevant to the issue of just compensation and should be excluded." (Reply Supp. Pl.'s Mot. Limine at 15.)
The Court grants this portion of Plaintiff's Motion in Limine. These issues have absolutely nothing to do with just compensation and would only serve to confuse the jury and waste time.
IV. Conclusion
ACCORDINGLY, the Court GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART Plaintiff's Motion in Limine [61]. The Court DENIES WITHOUT PREJUDICE the portion of Plaintiff's Motion that seeks to exclude information on tax cards or tax assessments other than valuation information, and GRANTS the Motion in all other respects. The Court GRANTS IN PART AND DENIES IN PART Defendant's Motion in Limine [62]. The Court GRANTS the portions of the Motion relating to the proportion of landowners who settle versus the proportion of landowners who proceed to trial in condemnation actions. The Court GRANTS IN PART AND DENIES IN PART the portion of the Motion relating to public funds, and it excludes evidence or argument indicating that a judgment in this case would be paid out of public funds or would increase utility rates. The Court, however, denies that portion of the Motion to the extent that Defendant seeks to exclude evidence relating to the public nature of TVA. The Court DENIES Defendant's Motion in Limine in all other respects.
IT IS SO ORDERED, this the 29th day of October, 2018.

Defendant also requests that "determinations regarding the admissibility of any evidence potentially introduced in this matter be made by the Court after a hearing pursuant to Rule 104(c) of the Federal Rules of Evidence and that such questions be resolved outside the presence of the jury." (Def.'s Mot. Limine at 4; see also Br. Supp. Def.'s Mot. Limine (Docket Entry No. 62-1) at 8 (requesting a hearing under Rule 104(c) to determine whether any of the sales Plaintiff proffers are sufficiently similar to be admissible); id. at 9 (same); id. at 11-12 (again requesting a hearing under Rule 104(c).) Plaintiff objects to Defendant's request for an evidentiary hearing. (Resp. Def.'s Mot. Limine at 2 n. 1; id. at 11.)
The Court is not required to hold a hearing to address evidentiary issues. Federal Rule of Evidence 104(c) provides, in relevant part that "[t]he court must conduct any hearing on a preliminary question so that the jury cannot hear it if ... justice so requires." Fed. R. Evid. 104(c). The Rule does not require the Court to hold a hearing on every single evidentiary issue. The Court has resolved the matters raised by the Parties' Motions in Limine in this Order, and it finds that no hearing is necessary. Certainly, to the extent that evidentiary issues arise at trial, the Court can, and will, if appropriate, resolve the matters outside the presence of the jury or via a bench conference.

Federal Rule of Evidence 401 provides:
Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.
Fed. R. Evid. 401. Federal Rule of Evidence 402, in turn, states in relevant part that: "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendant's contention that he entered into the conservation easement in 2012 but no longer used the subject property as agricultural property as of the date of the taking is problematic. By entering into a conservation use value covenant, a "taxpayer agrees to keep his property in a 'good faith' farming use for the life of the covenant exemption which is ten years." (Docket Entry No. 69-1 at 1.) Either Defendant is not being honest with the Gordon County Tax Office or he is not being forthright with the Court.

With all due respect to Defendant and his counsel, this is precisely what a Daubert motion requests the Court to do.

Federal Rule of Civil Procedure 71.1 does not preempt Rule 26(a)'s disclosure requirements or Rule 37(c)'s sanctions. Federal Rule of Civil Procedure 71.1(a) provides that the Federal Rules of Civil Procedure "govern proceedings to condemn real and personal property by eminent domain, except as this rule provides otherwise." Fed. R. Civ. P. 71.1(a). Federal Rule of Civil Procedure 71.1(e)(3) states:
A defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed. But at the trial on compensation, a defendant-whether or not it has previously appeared or answered-may present evidence on the amount of compensation to be paid and may share in the award.
Fed. R. Civ. P. 71.1(e)(3). Rule 71.1 is silent as to disclosure requirements or as to sanctions for failure to disclose information as required, and the provisions of the Federal Rules of Civil Procedure addressing those matters remain applicable and in full force and effect. Moreover, nothing in Rule 71.1(e)(3) is inconsistent with the provisions of the Federal Rules of Civil Procedure concerning disclosure requirements and discovery sanctions. Rule 71.1 does not provide help to Defendant. In any event, even in a condemnation proceeding, "questions regarding the admissibility of evidence are left to the discretion of the trial court." United States v. 27.93 Acres of Land, More or Less, Situate in Cumberland Cty., Commonwealth of Pa. Tract No. 364-07, 924 F.2d 506, 512 (3d Cir. 1991) (internal quotation marks and citation omitted).

Plaintiff argues that the Court should exclude the learned treatises "because Defendant has no expert witness through whom the treatises can be introduced, and they are hearsay." (Br. Supp. Pl.'s Mot. Limine at 8 n. 5.) Plaintiff is correct.

Plaintiff argues that the drone video is dated May 17, 2017, but Defendant did not produce it until August 7, 2018. (Br. Supp. Pl.'s Mot. Limine at 8 n. 4.) Plaintiff also notes that the video is subject to exclusion because "it does not have an authenticating witness and ... it depicts transmission lines on properties other than [the subject property]." (Id. ) Plaintiff is correct that the video is inadmissible.

Plaintiff correctly points out that many of the documents and exhibits would likely be inadmissible even if Defendant had complied with his disclosure obligations.

Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).